No. 18-20780

**In the United States Court of Appeals
For the Fifth Circuit**

———————————

UNITED STATES OF AMERICA,
*Plaintiff – Appellee*,

v.

STEPHEN E. STOCKMAN,
*Defendant - Appellant.*

———————————————

**On Appeal from the United States District Court
For the Southern District of Texas, Houston Division
USDC No. 4:17-cr-00116-2**

———————————————

**MOTION FOR COURT'S PERMISSION
FOR *AMICI CURIAE* TO FILE REPLY BRIEF TO
ANSWERING BRIEF FOR THE UNITED STATES**

———————————

MARK J. FITZGIBBONS
9625 Surveyor Court, Suite 400
Manassas, VA  20110
(703) 392-7676
mfitzgibbons@americantarget.com

*Counsel for Movant American Target
Advertising, Inc. and Co-Amici\**

\*  Individual *amici* include (titles and organizations shown for identification purposes only):

Arthur D. Ally
Maitland, FL

Jim Babka
President, DownsizeDC.org, Inc
Akron, OH

Pastor Chuck Baldwin
Liberty Fellowship
Kila, Montana

Bob Barr
Former Congressman, Georgia
Founder and President, Liberty Guard
Atlanta, GA

L. Brent Bozell, III
Founder and Chairman, Media Research Center
Reston, VA

Floyd Brown
Chairman, America Fighting Back PAC
Washington State

Ken Campbell
Lincoln, CA

Sandy Campbell
Lincoln, CA

James N. Clymer, Esq.
Clymer Bodene, P.C.
Lancaster, PA

Chad Connelly
President, Faith Wins
Prosperity, SC

The Honorable Donald J. Devine
Former Director, U.S. Office of Personnel Management

William J. Federer
Ft. Meyers, FL

Ellen Grigsby
Dallas, TX

Rebecca Hagelin
Columnist, The Washington Times
Placida, FL

Colin Hanna
Chairman, Let Freedom Ring
West Chester, PA

Charles Daniel Key
Former Oklahoma state representative

James L. Martin
Founder/Chairman, 60 Plus Association
Arlington, VA

Jenny Beth Martin
Honorary Chairman, Tea Party Patriots Action
Woodstock, GA

Colby May, Esq.
Director and Senior Counsel, Washington Office
American Center for Law & Justice
Washington, D.C.

The Honorable Bob McEwen
U.S. House of Representatives
Former Member, Ohio
Washington, D.C.

Barry Meguiar, President
Revival Outside the Walls
Irvine, CA

Joseph Miller, Esq.
Law Offices of Joseph Miller, LLC
Fairbanks, AK

Malcolm Morris
Houston, TX

Pat Nolan
Director, Center for Criminal Justice Reform
The American Conservative Union Foundation
Alexandria, VA

Richard Norman
Founder and President, The Richard Norman Company
Leesburg, VA

Reverend Rick Scarborough, D. Min.
Rick Scarborough Ministries
Lufkin, TX

Richard A. Viguerie
Chairman, American Target Advertising, Inc.
Manassas, VA

Pursuant to FED. R. APP PROC 29(a)(7), movant *amici curiae* American Target Advertising, Inc. *et al*. ("*Amici*") requests the Court's permission to file a reply brief to the Answering Brief for the United States, and states the following grounds in support of this motion, and the reasons why an amicus reply brief is desirable and why the matters to be asserted in a reply brief are relevant to the disposition of the case.  Also, in accordance with 5th CIR. R. 27.4, counsel for your movant contacted counsel for all parties, and none will file opposition to this motion.

The Answering Brief for the United States ("Answering Brief") expressly references *Amici* as to their Brief in Support of Appellant and for Reversal ("*Amici* Brief") 15 times, creating the need for a reply.  Among the important issues for the correct disposition of this case that *Amici* wish to address in a reply brief is that the Answering Brief's reliance on *McConnell v. FEC*[1] for defining "express advocacy" for purposes of the Government's case that Appellant Steve Stockman unlawfully coordinated with a third party incorrectly states the scope of that decision and the underlying statutory law.  *McConnell* simply did not do what the Government argues.

---

[1] 540 U.S. 93 (2003).

Appellant was convicted for allegedly engaging in a conspiracy to fraudulently raise money for what the Government argued at trial was an "independent expenditure" on behalf of his senate campaign committee, which the Government furthered argued was unlawfully coordinated with a tax-exempt Internal Revenue Code § 501(c)(4) organization, which therefore allegedly resulted in an illegal campaign contribution to Appellant Steve Stockman. Your *Amici* argued in their brief that the printed and mailed publication, which the Government claimed was an "independent expenditure" triggering the unlawful coordination rules (and thus allegedly making it an illegal campaign contribution), did not contain the "magic words" expressly advocating election or defeat of a candidate under the test in *Buckley v. Valeo*, 424 U.S. 424 (1976), which remains the standard even as recognized by the Fifth Circuit. Am. Cur. Br. 16-23. Because there was no "express advocacy," thus no "independent expenditure," as a matter of law there was no unlawful coordination, thus no illegal campaign contribution.

*McConnell*, on which the Government relies for its argument, deals with express advocacy as applied only to provisions of the Bipartisan Campaign Reform Act ("BCRA," also known as the "McCain–Feingold Act," Pub.L. 107–155, 116 Stat. 81, enacted March 27, 2002, H.R. 2356). BCRA amended the Federal Election Campaign Act by adding and defining the term "electioneering

communications," which are certain broadcast ads made within 30 or 60 days of a federal election.[2] The discussion of "express advocacy" and "coordinated communications" in *McConnell* to which the Government incorrectly alludes generally in its Answering Brief, and specifically at pages 49-51, arose solely in the context of "plaintiff's challenge to BCRA's use of the term 'electioneering communication.'" *McConnell*, 540 U.S. at 190. In other words, BCRA made one test of express advocacy for broadcast ads called "electioneering communications," but did not amend the law as to "independent expenditures," thus the *Buckley* test for "independent expenditures," with its "magic words" of "express advocacy," remains wholly intact. Since *McConnell* did nothing to change the law with respect to "express advocacy" in the context of "independent expenditures," it does not govern or apply to the printed direct mail newspaper called *The Texas Conservative News* at issue in this appeal, which lacked the magic words under the *Buckley* test (*see* Am. Cur. Br. at 17).

As the *McConnell* opinion makes clear in discussing "BCRA § 202's Treatment of 'Coordinated Communications' as Contributions," "*Buckley*'s narrow interpretation of the term 'expenditure' was not a constitutional limitation on Congress' power to regulate federal regulations. Accordingly there is no reason why Congress may not treat coordinated disbursements for electioneering

---

[2] *See McConnell*, 540 U.S. at 191-193.

3

communications in the same way it treats other coordinated expenditures," i.e., independent expenditures with the magic words. *McConnell*, 540 U.S. at 195. *McConnell* did not change the extant rules for *independent expenditures*, and the Government cites no statutory or case law that it did. None exists.

The clarity and importance of this issue for Appellant, your *Amici*, and hopefully the Court necessarily depend on understanding that BCRA created a new test for "electioneering communications," which are broadcast ads only, but left entirely intact the old test for "independent expenditures," which would encompass printed materials were they to contain the magic words. ("Section 202 of BCRA amends FECA § 315(a)(7)(C) to provide that disbursements for 'electioneering communication[s]' that are coordinated with a candidate or party will be treated as contributions to . . . that candidate or party." *McConnell*, 540 U.S. at 202.[3])

Since *McConnell*, the statutory coordination rules apply only to (1) independent expenditures, which require the "magic words" from *Buckley*, and (2) electioneering communications. Neither type of communication was present in this case.

---

demonstrate. Even if so, the Jury Instructions would be misleading and wrong as a matter of law.

Both the Appellant and the *Amici* have argued that tax-exempt law and

campaign finance law are complex (*see* Brief of Appellant at 27-28, *Amici* Brief at

2), so much so that these areas of law are specialty practices (*see Amici* Brief at 5).

Indeed, the fine lawyers for the Government, as prosecutorial generalists, were

confused about its terms and applications, which made it easier for the jury to be

confused in application of facts and testimony, and indeed created that confusion.

It remains, however, that the Government's case against Appellant Stockman as to

the issues of "express advocacy," "independent expenditures," and unlawful

coordination were incorrectly argued by the Government, resulting in grounds for

reversal.  The Answering Brief only furthers the confusion for this Court, and your

*Amici* seek the Court's permission to file a reply brief explaining why the

Government's reliance on *McConnell* entirely lacks merit.  Such plain error about

the law by the Government -- especially in the context of a criminal prosecution on

which it achieved a severe conviction -- is worthy of full and exacting attention by

the Court in considering reversal, thus making a reply brief by *Amici* needed and

valuable.

Another issue your *Amici* wish to dispute via a reply brief is the argument

made at 33-34, n.10 of the Answering Brief that "Stockman did not make [an]

argument in his opening brief" and therefore waived it for purposes of the issue

argued by your *Amici*.  This applies to *Amici*'s argument that a Motion in Limine restricted Appellant's "full Sixth Amendment defense rights at trial to refer to Lois Lerner" (Am. Cur. Br. at 16), the controversial former head of the Tax-Exempt unit at the Internal Revenue Service.  For its objection, the Government cites Am. Cur. Br. at 15-16 & n.7 -- but not n.8 nor n.9 at Am. Cur. Br. 16, which supplemented *Amici*'s argument on this issue by relating it to the animus of the once-powerful, now-disgraced Ms. Lerner, and her colleagues, toward the confluence of conservative nonprofits, money, and politics.  These issues argued by your *Amici* are entirely related to the legal arguments in Appellant's Brief because Ms. Lerner was a central figure in a national scandal involving the misapplication of tax-exempt and campaign finance laws, especially with regard to small-government conservative critics of government such as Appellant Stockman.  For example:

> Lerner knocks the "whacko wing" of the Republican Party and conservative radio shows.  [House Ways and Means Chairman Dave] Camp said in a statement that he hopes the released emails urge the Justice Department to "aggressively pursue this case" and appoint a special counsel. In May 2013, Lerner acknowledged that the IRS chose groups with "tea party" in their name for additional review in determining their tax-exempt status as social welfare groups.[4]

---

[4]  Alex Rogers, *Emails: Former IRS Official Lois Lerner Called Republicans 'Crazies' and '—holes'*, Time.com, July 30, 2014, https://time.com/3059918/lois-lerner-republicans/ (Last visited July 26, 2019).  The various investigations of Ms. Lerner even found emails by her in which she refers to Republicans as "crazies" and "assholes."  Id.

*Amici*'s argument supplements central arguments made by Appellant as to

the misguided prosecution where the Government was wrong about matters

involving tax-exempt and campaign finance law.[5]  Especially given the errors of

tax-exempt and campaign finance law by the Government in its prosecution, which

issues were argued in Appellant's Brief, the order granting the Government's

motion in limine foreclosed the presentation and development of potentially game-

changing facts and arguments about issues that Appellant did indeed expressly

---

[5]  It is "appropriate to use an amicus curiae brief to amplify or supplement the main legal and factual arguments presented in a party's brief." Sarah F. Corbally and Donald C. Bross, *A Practical Guide For Filing Amicus Briefs In State Appellate Courts* (2001), https://cdn.ymaws.com/naccchildlaw.site-ym.com/resource/resmgr/amicus_curiae/amicuspracticalguide.pdf  (last visited July 25, 2019); "An amicus brief should supplement, not duplicate, a party's brief."  Justice Craig T. Enoch (Ret.) and Robert J. Witte, *A Business Perspective on Amicus Briefing* (2019), citing Mary-Christine Sungaila, *Effective Amicus Practice Before the United States Supreme Court: A Case Study*, SOUTHERN CALIFORNIA REVIEW OF LAW AND WOMEN'S STUDIES, Spring 1999, Pg. 188, http://apps.americanbar.org/buslaw/newsletter/0029/materials/pub/51.pdf  (last visited July 25, 2019);  "The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law that may otherwise escape consideration." *Plaintiff's Response to Microsoft's Objection to Participation by Professor Lawrence Lessig as an Amicus Curiae* (December 20, 1999), citing *Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9 Cir. 1982); see also *New England Patriots Football Club, Inc., v. University of Colorado*, 592 F.2d 1196, 1198 n. 3, https://www.justice.gov/atr/file/690021/download (last visited July 25, 2019).

argue in his Brief,[6] but for which the record was hampered by the suppression of Appellant's defense.  Stockman was unjustly limited in defending himself in the criminal trial where the issues were tied to those advanced by Ms. Lerner and a national scandal involving her abuse of power involving tax-exempt law, campaign finance law, and unlawful politically-motivated targeting of conservatives.  Indeed, as reported this year, some "100 right-of-center groups wrongfully targeted for their political beliefs under the Obama administration's Internal Revenue Service" received settlement checks in a class-action lawsuit.  M.D. Kittle, *Conservative Groups Targeted in Lois Lerner's IRS Scandal Receive Settlement Checks*, The Daily Signal (January 11, 2019),

https://www.dailysignal.com/2019/01/11/conservative-groups-targeted-in-lois-lerners-irs-scandal-receive-settlement-checks/ (last visited July 25, 2019).

The facts and arguments that Appellant was foreclosed from developing and using in his criminal defense are or may have been consequential.  For example, when he was a Member of Congress, Appellant had "filed a motion directing congressional police to arrest Lois Lerner . . . for contempt of Congress."  Rachael

---

[6] "Improper and Unnecessary Instructions on 501(c)(3) and (c)(4) Organizations Prejudiced Stockman …"   Brief of Appellant at 29.   "Most of Stockman's activity in this case occurred in the context of 501(c)(3) and (c)(4) organizations.  These [disputed jury] instructions served as backdrop *for the entire trial*."  Id. at 30 (emphasis added).  "In closing argument, the Government repeatedly referred to 'sham non-profits.'"  Id. at 34.

Bade, *Stockman pushes for Lerner arrest*, Politico (July 10, 2014).[7]  Conversely as reported in 2014, Lerner's emails showed she "was in contact with the Department of Justice in May 2013 about whether tax exempt groups could be criminally prosecuted for 'lying' about political activity."[8]  Another example is that Appellant was prohibited from using the name "Lois Lerner" to address denial by the Internal Revenue Service of his application for status as a 501(c)(3) organization.  ROA 2201.

Major elements of the Government's case were based in erroneous arguments about use of tax-exempt entities for "political" communications, what constituted "political" for purposes of tax-exempt law, and the interplay between tax-exempt organizations and political expenditures.  It was Ms. Lerner who both sparked and attempted preemptive damage control for congressional hearings about IRS abuse of conservative nonprofit organizations under her watch when she was quoted as stating at an American Bar Association meeting:

---

[7] https://www.politico.com/story/2014/07/steve-stockman-lois-lerner-irs-108783 (last visited July 23, 2019).

[8] Katie Pavlich, *BREAKING: New Emails Show Lois Lerner Was in Contact With DOJ About Prosecuting Tax Exempt Groups*, Townhall (April 16, 2014), https://townhall.com/tipsheet/katiepavlich/2014/04/16/breaking-new-emails-show-lois-lerner-contacted-doj-about-prosecuting-tax-exempt-groups-n1825292?utm_source=TopBreakingNewsCarousel&utm_medium=story&utm_campaign=BreakingNewsCarousel (last visited July 23, 2019).

The problem in the (c)(4) area is that the kind of activity the organizations were doing is okay for (c)(4)s but it can't be their primary activity. So that weighing and balancing is a little different than when we have a (c)(3) that says you can't do any political activity. That's a pretty easy question. So I guess my bottom line here is that we at the IRS should apologize for that, it was not intentional, and as soon as we found out what was going on, we took steps to make it better and I don't expect that to reoccur.[9]

And as reported in *The Weekly Standard*, "[p]erhaps no other IRS official is more intimately associated with the tax agency's growing scandal than Lois Lerner, director of the IRS's Exempt Organizations Division."[10]  There even was known prosecutorial interaction between the Justice Department and Lerner regarding "nonprofit groups conducting political activity."[11]

---

[9] Rick Hasen, *Transcript of Lois Lerner's Remarks at Tax Meeting Sparking IRS Controversy*, electionlawblog.org (May 11, 2013), https://www.electionlawblog.org/?p=50160 (last visited July 23, 2019).

[10] Mark Hemingway, *IRS's Lerner Had History of Harassment, Inappropriate Religious Inquiries at FEC*, The Weekly Standard (May 20, 2013), https://www.weeklystandard.com/mark-hemingway/irss-lerner-had-history-of-harassment-inappropriate-religious-inquiries-at-fec (last visited July 23, 2019).

[11] "Republicans on a House oversight panel say the Justice Department asked former Internal Revenue Service official Lois Lerner in 2010 to help them build criminal cases against nonprofit groups conducting political activity."  Susan Ferrechio, *GOP: Justice Department pushed Lois Lerner to help build criminal case against nonprofits*, WashingtonExaminer.com, May 22, 2014, https://www.washingtonexaminer.com/gop-justice-department-pushed-lois-lerner-to-help-build-criminal-case-against-nonprofits (last visited July 26, 2019).

Indeed, Appellant was foreclosed from arguing that the Government's entire case -- rife with errors about the law governing campaign finance and political advocacy by tax-exempt organizations -- may have been an extension of scandalous positions advanced by once-powerful Lerner, even in conjunction with some prosecutors within the Department of Justice, or was even retributional towards the Appellant for his legislative and legal aggression towards Lerner and those around her, rather than fair and accurate justice.  Appellant was prohibited from mentioning Lerner's name in ways that would or could have aided a fairer trial about issues raised in Appellant's Brief -- issues indeed tied at the hip to the core arguments raised in Appellant's Brief.  The Government's objection is therefore misplaced since this issue argued by your *Amici* is certainly consistent with, supplemental to, and even integral to Appellant's arguments for reversal.

Additionally, the public interest and *Amici*'s interests are served when the courts do not act to chill First Amendment rights to criticize government officials, or identify government officials associated with particular policies or legal scandals.  The Government's Motion in Limine certainly gives at least the appearance that it sought to limit testimony that would place a justifiably dark cloud of greater reasonable doubt over its case.  That this happened in the context

11

of a criminal trial focused on nonprofit political speech and fundraising, where First Amendment rights are highly in play, is even more disturbing to your *Amici*.

WHEREFORE, for the foregoing reasons, movant *amici* curiae American Target Advertising, Inc. *et al*. respectfully request the Court's permission to file a reply brief.

Dated: July 30, 2019

Respectfully submitted,

/s/ *Mark J. Fitzgibbons*
Mark J. Fitzgibbons
9625 Surveyor Court
Suite 400
Manassas, VA 20110
703.392.7676
mfitzgibbons@americantarget.com

Counsel for Movant American Target Advertising, Inc. and Co-Amici

# 5TH CIR. RULE 27.4 CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Amici Curiae American Target Advertising, Inc. et al. certifies that the following persons and entities as described in Fifth Circuit Rule 27.4 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellee: United States of America; Counsel for Appellee: Carmen Mitchell of the U.S. Attorney's Office, Houston, TX and Robert Heberle of the U.S. Department of Justice, Washington, D.C.


Appellant: Stephen E. Stockman; Counsel for Appellant: David Warrington of Kutak Rock, LLP, Washington, D.C.


Amici: American Target Advertising, Inc., Manassas, VA; Arthur D. Ally Maitland, FL; Jim Babka, Akron, OH; Pastor Chuck Baldwin, Kila, Montana; Bob Barr, Atlanta, GA; L. Brent Bozell, III, Reston, VA; Floyd Brown, Washington State; Ken Campbell, Lincoln, CA; Sandy Campbell, Lincoln, CA; James N. Clymer, Esq., Lancaster, PA; Chad Connelly, Prosperity, SC; The Honorable Donald J. Devine; William J. Federer, Ft. Meyers, FL; Ellen Grigsby, Dallas, TX; Rebecca Hagelin, Placida, FL; Colin Hanna, West Chester, PA; Charles Daniel

Key, Former Oklahoma state representative; James L. Martin, Arlington, VA;

Jenny Beth Martin, Woodstock, GA; Colby May, Esq., Washington, D.C.; The

Honorable Bob McEwen, Washington, D.C.; Barry Meguiar, Irvine, CA; Joseph

Miller, Esq., Fairbanks, AK; Malcolm Morris, Houston, TX; Pat Nolan,

Alexandria, VA; Richard Norman, Leesburg, VA; Reverend Rick Scarborough, D.

Min., Lufkin, TX; Richard A. Viguerie, Manassas, VA.

Counsel for Amici Curiae: Mark J. Fitzgibbons, Manassas, VA.

American Target Advertising, Inc. is a corporation organized under the laws of

Virginia.  Its parent corporation, The Viguerie Company, is a corporation

organized under the laws of Virginia, and no publicly held corporation owns 10%

or more of the stock of either.

<div style="margin-left: 40%;">

/s/ Mark J. Fitzgibbons
Mark J. Fitzgibbons
Counsel for movant *Amici Curiae*
American Target Advertising, Inc. *et al*.

</div>

# CERTIFICATE OF SERVICE

I hereby certify that, on July 30, 2019, I electronically filed the foregoing

MOTION FOR COURT'S PERMISSION FOR AMICI CURIAE TO FILE

REPLY BRIEF TO ANSWERING BRIEF FOR THE UNITED STATES with the

Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the

appellate CM/ECF system.  I further certify that all participants in the case are

registered CM/ECF users and will be served by the appellate CM/ECF system.


*/s/  Mark J. Fitzgibbons*

Mark J. Fitzgibbons
9625 Surveyor Court
Suite 400
Manassas, VA 20110
703.392.7676
mfitzgibbons@americantarget.com

*Counsel for Movant American Target*
*Advertising, Inc. and Co-Amici*

# CERTIFICATE OF COMPLIANCE WITH RULE 27

In accordance with Federal Rule of Appellate Procedure 27, I certify that the

foregoing motion is proportionately spaced using Times New Roman 14-point font

and contains 2,579 words.

 */s/ Mark J. Fitzgibbons*
Mark J. Fitzgibbons
9625 Surveyor Court
Suite 400
Manassas, VA 20110
703 392 5656
mfitzgibbons@americantarget.com

*Counsel for Movant Amici Curiae*
*American Target Advertising, Inc. et al.*